## Cravens v. Estes.

(Decided September 22, 1911.)

### Appeal from Marion Circuit Court.

1. Arbitration and Award—Mere Agreement or Attempt to Arbitrate—Subsequent Action of One Arbitrator and Umpire.— Where there is a mere agreement to arbitrate, or an attempt at arbitration, the subsequent action of one of the arbitrators

and the umpire to consummate the attempted arbitration by an award, is unauthorized and illegal.

2. Same—Notice.—One arbitrator and umpire are without authority to consummate an arbitration, or to make an award in the absence of the other arbitrator and without notice to him.

3. Same—Umpire.—An umpire is one called into the arbitration to act only after a disagreement between the arbitrators, and while his opinion and judgment as to the points of disagreement must control and determine the award, he has no right in the absence of one of the parties, and one of the arbitrators, to act alone upon mere information, from the other party and arbitrator as to what the points of disagreement were.

BEN SPALDING for appellant.

HUGH P. COOPER for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellee sued appellant in the court below for $500.00, alleged to be due as balance of rent for the year 1907 upon a farm formerly owned by Sallie E. Ray, deceased, appellee's mother, at whose death the farm descended to appellee as her only child and heir at law.

It was alleged in the petition that appellee's mother in 1902 sold the farm to appellant at the price of $12,000.00, for which the latter executed to her his twelve promissory notes of $1,000.00 each, bearing six per cent. interest from date, and one of which was to be paid in each of the twelve years; that at the time of the sale the vendor executed to appellant a title bond in which she covenanted to convey him the farm upon the payment by him of all of the notes and accrued interest.

It was also alleged in the petition that appellant failed to pay any of the notes and did not keep paid the interest thereon, for which reason Mrs. Ray, early in the year 1906, bought back the land at the price of $12,-000.00, which she paid by returning to appellant his twelve notes and receiving from him the title bond evidencing the previous sale by her to him; that she thereupon leased him the land for the years 1906 and 1907 at an agreed rental of $1,000.00 per year, $500.00 of which appellee sought in this action to recover.

It was further alleged in the petition that running through the several years during which appellant was in possession of the farm in question, there were numerous

transactions between appellee and his mother on the one part and appellant on the other, by which the latter became indebted to them, in addition to a part of the unpaid interest on the twelve land notes; that there had only been partial settlements by the parties; and the prayer of the petition asked that a final settlement be made by the court of all matters of account between them.

Although stated in the petition that Mrs. Ray died in 1907, intestate, it does not appear from its averments that there was any administration of her estate, and appellee did not sue as administrator, but as her only heir at law and a joint actor and beneficiary with her in the several transactions alleged to have occurred between them and appellant. Appellant, without questioning the right of appellee to maintain the action as brought, by answer and counterclaim denied any indebtedness for rent, or otherwise, to appellee or his mother's estate, and alleged an indebtedness on the part of appellee and the estate to him of $878.67, for which he asked judgment against appellee. The affirmative matter of the answer and counterclaim was controverted by reply, after which appellant and appellee entered into the following agreement to arbitrate the matters in controversy between them:

"The parties hereto do hereby agree that the matters involved in the above styled action shall be arbitrated and ascertained by Ben Spalding and Hugh P. Cooper, who shall award to the plaintiff or defendant the amount due upon the settlement of the amounts involved in the above-styled action. It is further agreed that said Spalding and Cooper shall report their conclusions in writing on or before April 1st, 1910.

"It is also agreed that in the event a final adjustment of the matters involved in the above-styled action is not agreed on by said Spalding and Cooper then in that event said Spalding and Cooper shall select a third arbitrator who shall finally decide all or any item of controversy that said Spalding and Cooper fails to agree upon.

"It is further agreed that in the event said Spalding and Cooper fail for a period of ten days to agree upon the third arbitrator, then such third arbitrator shall be agreed upon by the parties to this action.

"It is also agreed that this arbitration shall be finally

concluded and award made on or before the first day of
the next term of the Marion Circuit Court. It is agreed
by each of the parties to this action that he will abide
by the award rendered by this arbitration and will pay
the amount awarded against him including the cost of
this action.

"T. M. ESTES,
"V. CRAVEN."

The attorneys selected as arbitrators, one of whom
had represented appellant and the other appellee in the
pending action, met and attempted to arbitrate the mat-
ters in dispute between them and seemed to have reached
an agreement as to all controverted items except four,
two of these being items of $720.00 each, for which appel-
lant claimed credit, and the others items of $34.00 and
$98.00, respectively, for which appellee claimed credit.

It appears, however, from a written statement from
appellee's attorney, announcing to the parties the fail-
ure of an arbitration, that the only matters about which
the arbitrators disagreed were the items of $34.00 and
$98.00 referred to; but a similar statement from appel-
lant's attorney asserted that the disagreement also in-
cluded the items of $720.00 each. At any rate the two
arbitrators selected by the parties reported their fail-
ure to agree upon an award, and also their inability to
agree upon or select an umpire. Afterwards appellant
and appellee met and agreed upon R. T. McCauley as
umpire. Appellee contends that he agreed upon Mc-
Cauley as umpire upon the condition that appellant
would withdraw his demand to be credited with the items
of $720.00 each, about which the arbitrators disagreed,
and that appellant agreed to this condition, which left
the $34.00 and $98.00 items as the only controverted mat-
ters. Appellant, however, denies that he agreed to with-
draw his claim to the two items of $720.00 each, or that
the selection of the umpire was conditioned upon such
withdrawal.

On the 13th of April, 1910, and shortly after his se-
lection as umpire, McCauley, in company with appellant,
went to Lebanon and to the office of appellant's attorney
for the purpose of acting with the latter and appellee's
attorney in completing the arbitration. Appellee, near
the office of appellant's attorney, advised him that day
that he would not submit to the arbitration, or be bound
by any award that might be made, because of informa-

tion received from appellant that he would not stand by his agreement, made when McCauley was selected as umpire, to withdraw his claim to the two credits of $720.00 each.

After an adjournment to April 15th, appellant's attorney and McCauley met in the former's office and proceeded to settle the matters in litigation between appellant and appellee; concluding their work with an award which declared appellee indebted to appellant in the sum of $257.94. The award was filed and entered of record in the Marion Circuit Court. Appellant was present at the meeting held by his attorney and McCauley and gave his testimony as to the matters considered by them. Neither appellee nor his attorney was present, nor was there any testimony introduced in appellee's behalf.

Following the filing of the award in the Marion Circuit Court, appellant filed therein an amended answer and counterclaim setting forth the award, and asking that it be made the judgment of the court, or that judgment be entered in his favor against appellee for the amount it declared the latter indebted to him. Appellee, by reply, denied any liability by reason of the award and attacked its validity on the ground that he had not agreed upon McCauley as umpire; that the latter as umpire and appellant's attorney, who alone acted with him as arbitrator, were without power to conduct the arbitration, or make an award without the presence and assistance of the arbitrator selected by appellee; that the arbitration was secretly conducted in the absence of and without notice to appellee or his attorney, the other arbitrator upon whom the parties had agreed; and the award unjust to appellee and a fraud upon his rights; for which reasons he prayed that it be declared void and set aside by the court.

Appellant, by rejoinder, traversed the averments of the reply and on the issues thus made the parties took proof. Upon the hearing the circuit court adjudged the award void and referred the case to the master commissioner for a settlement of the accounts between the parties and a report thereof at a subsequent term. From that judgment this appeal is prosecuted. We think the judgment sustained by the evidence as the weight of it was to the effect, that the arbitration attempted by one of the arbitrators and the umpire was illegally conducted and this being true the award was unenforcible.

The agreement to arbitrate was commenced by the parties in good faith in so far as the selection of the arbitrators was concerned, but the arbitrators did not complete the arbitration because they disagreed as to at least four matters in dispute between the parties. They also failed to agree. upon a third person to act as umpire, hence, under the terms of the written agreement to arbitrate, the selection of the umpire fell upon appellant and appellee, who agreed that W. T. McCauley was the umpire selected by them.   Appellee contends, however, and such was his testimony, that he was induced to agree that McCauley might act as umpire, because of the assurance given him by appellant that he would withdraw his demand previously made to the arbitrators, to be credited with the two items of $720.00 each, about which the latter disagreed in the arbitration attempted by them, and that appellant's withdrawal of his claim to these credits would have left of the matters as to which the arbitrators failed to agree, only the other two disputed items of $34.00 and $98.00 claimed as credits by appellee, and as to these items he was willing, and so informed appellant, that McCauley should act as umpire.

Appellant in giving his testimony admitted that he suggested McCauley as umpire, but denied that he agreed to withdraw his claim to the credits referred to, or that appellee was induced by such agreement to consent to the selection of McCauley as umpire.  But we think that appellee's contention that such was the agreement is sustained by what occurred on the 13th of April, 1910, when appellant carried McCauley to the office, in Lebanon, of the arbitrator of his selection, to begin the arbitration; for appellee then in substance advised appellant, McCauley, and the arbitrator in question, that as appellant had repudiated his agreement to withdraw his claim to the two credits he demanded, he (appellee) would refuse to go on with the arbitration.

We do not find in the record that McCauley made any denial of this statement as coming from appellee.  Appellant, and the arbitrator of his selection, did deny that appellee gave the repudiation by appellant of any agreement to withdraw his claim to the two credits of $720.00 each, as a reason for refusing to continue the arbitration, but we fail to discover that either of them explicitly denied that appellee then claimed such an agreement had been made by appellant and repudiated by him.

There is to be considered in this connection a circumstance appearing from the record, which we regard strongly corroborative of appellee's version of what occurred at the meeting of April 13th, 1910. It is, that after the interview occurred in which appellee declined to go on with the arbitration, he was approached by the arbitrator of appellant's selection and told that McCauley's fee for leaving his home and going to Lebanon to act as umpire was $6.00, one-half of which should be paid by appellant and the other half by appellee; whereupon appellee paid him $3.00 for McCauley and later received a receipt therefor. As the arbitration claimed to have been conducted by the one arbitrator and umpire was not held until April 15th, two days after the payment by appellee of one-half of the umpire's entire fee, it may be well argued that the payment of half that fee of the umpire was demanded of appellee on April 13th, because appellant, the one arbitrator and umpire understood from what appellee that day said to them that he had withdrawn his consent to the arbitration and would not be bound by any award that might be made; in view of which they must have known and evidently concluded that there was no further need of the umpire's services; therefore, he was only entitled to be compensated for leaving his home and business and going to Lebanon for the purpose of acting as umpire in the contemplated arbitration.

In our opinion the case is one of a mere agreement to arbitrate, or an attempt at an arbitration, and if so the subsequent action of one of the arbitrators and the umpire to consummate the attempted arbitration by an award, was unauthorized and illegal. Gore v. Chadwick, 6th Dana, 477; McClannahan v. Kenneday, 1st J. J. M., 332; Gaither v. Dougherty, 18 R., 709.

It is apparent from the record that neither appellee nor the arbitrator of his selection had notice of the meeting held or attempted arbitration had by the other arbitrator and umpire at the former's office in Lebanon, on April 15th. It is true that on this point the arbitrator at whose office the meeting was held and perhaps appellant, testified that appellee did receive such notice but when their testimony is carefully analyzed it will be found that there was no such notice given him, but merely a general statement that the arbitrator and umpire were ready to proceed with the arbitration. At most this

statement amounted to no more than information to appellee that they were then, on the 13th, ready to proceed with the arbitration, and did not constitute notice to appellee that the arbitration or its consummation would be deferred to April 15th.

It is not claimed that the arbitrator selected by appellee was notified at any time of the purpose of the other arbitrator and umpire to enter upon the arbitration on the 15th of April. Notice to appellee and the arbitrator selected by him of the meeting of the 15th was indispensably necessary. Such notice need not have been in writing, but was required in some form.

Clearly the one arbitrator and umpire were without authority to consummate the arbitration or to make an award in the absence of the other arbitrator and without notice to him. An umpire is one called into the arbitration to act only after a disagreement between the arbitrators, and while his opinion and judgment as to the points of disagreement must control and determine the award, he has no right in the absence of one of the parties and one of the arbitrators, and without notice to them to act alone upon mere information from the other party and arbitrator as to what the points of disagreement were.

Leaving out of view the other grounds of objection urged by appellee to the award, those we have considered were sufficient to justify its rejection by the court below. While the law looks with favor upon all fair methods for settling controversies out of court, and thereby ending or preventing litigation, if such controversies are so settled, they must be fairly conducted and determined.

We express no opinion upon the matters of account in controversy between the parties to the action, as the settlement thereof rests with the commissioner and with the court.

Judgment affirmed.